**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TASHIA TASCHLER, individually and on behalf of all others similarly situated, ) ) ) | Case No: |
| Plaintiffs, ) ) | |
| v.  ) ) ) ) | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| J.P. MORGAN CHASE BANK, N.A., ) ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff, Tashia Taschler, individually and on behalf of all others similarly situated, alleges Defendant, J.P. Morgan Chase Bank, N.A. ("Chase" or "Defendant"), robo-called her numerous times in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

2. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm. "Robocalls" are the #1 consumer complaint in America today and the Defendant's conduct in this case is a good reason why.

3. The TCPA was enacted to prevent companies like Chase from invading American citizens' privacy and to prevent illegal robocalls.

4. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized calls to private homes. Congress enacted the TCPA to prevent real harm and found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call"

1

92571

and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014). As will be illustrated in this case, despite being told to stop, Chase refused to do so.

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

7. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" a/k/a "robodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

2

92571

8. The FCC has held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

9. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014).

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over the TCPA claims asserted in this action pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Financial Servs., LLC*, 565 U.S. 368 (2012).

11. The Court has personal jurisdiction because Chase's principal place of business is in this District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Chase, the sole Defendant, resides in this District pursuant to 28 U.S.C. § 1391(c) and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

13. Defendant has been subject to numerous lawsuits under the TCPA for robocalling third parties without consent attempting to collect others' debts. In fact, in 2015, this District granted final approval to a class settlement in *Allen v JP Morgan Chase Bank, N.A.*, 13-cv-08285, ECF 93 (N.D. Ill. October 21, 2015) where the class alleged Chase was calling third

92571

parties without consent to collect debts and kept calling despite requests to stop calling. That complaint alleged that plaintiff repeatedly called Chase to notify Chase that it was calling a wrong number with prerecorded calls but the Chase representative was unable to assist without the account information for someone who that plaintiff did not even know.

14. Yet, Defendant kept making robocalls and subsequently settled two additional TCPA class actions, including another one in this District. *See Gehrich v. Chase*, No. 12-cv-5510 (N.D. Ill. 2016) ($34 million TCPA class settlement); *Connor v. Chase*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) ($11,268,058 TCPA class settlement).

15. Despite at least three class settlements and numerous individual TCPA claims, Chase keeps making robocalls without consent.

16. Plaintiff is a natural person and citizen of the State of Indiana who resides in Michigan City, Indiana.

17. Plaintiff is the subscriber and regular user of the cellular telephone number at issue, (219) xxx-7061.

18. Thus, Plaintiff is the "called party" within the meaning of the TCPA. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012).

19. Defendant J.P. Morgan Bank, N.A. is a National Banking Association with its principal place of business at 270 Park Avenue, New York, New York 10017-2070.

20. In or around September 2019, Plaintiff began receiving numerous calls to her aforementioned cellular telephone number from Chase seeking to recover a debt relating to Robert Taschler, who was her deceased grandfather..

21. Since in or around September 2019, Chase made at least four (4) calls to Plaintiff's aforementioned cellular telephone number on the following dates: 9/17/19; 10/15/19;

4

92571

11/16/19; and 11/20/19.

22. Plaintiff answered the September 17, 2019 call, which had a caller ID of (847) 488-2001. There was a brief pause of dead air at the outset of the call, and the computer transferred Plaintiff to a Chase representative who asked for Robert Taschler. Plaintiff advised the Chase representative that this was her phone and Chase was calling the wrong number.

23. On October 15, 2019, Chase again called Plaintiff's cellular telephone number seeking to recover her deceased grandfather's debt. The caller ID for this call again displayed the number (847) 488-2001.

24. Plaintiff did not answer the October 15, 2019 call. Instead, the caller left the following message in Plaintiff's voicemail, which message began with a brief pause of dead air:

> [pause of dead air] Good afternoon, this message is for, uh, Robert Taschler. My name is Casper. I'm calling from Chase card services. This is regarding an important matter with Chase. It is not a sales or solicitation call. Please call us on (888) 293-5321, I repeat, it's (888) 293-5321, between 8:00 AM to midnight eastern standard time. I really appreciate you listening to this message and I hope you have a lovely day. Thank you.

25. On October 15, 2019, Plaintiff returned Chase's robocalls by calling (888) 293-5321. An artificial or prerecorded voice answered: "Thank you for calling Chase card services and returning our call." Plaintiff was then transferred to an artificial or prerecorded voice menu, which did not provide a way for Plaintiff to identify her number as a "wrong number" or opt out of further calls.

26. During the October 15, 2019 callback, Plaintiff asked that her cellular telephone number be removed from all accounts associated with Robert Taschler. The Chase representative told Plaintiff that she must verify Robert Taschler's social security number, date of birth and account in order to have her cellular telephone number removed. Plaintiff explained

5

that she did not have that information, and asked why she had to verify the account in order have her number removed since the account was not even hers. Plaintiff also advised Chase that she believed the calls to her cellular telephone number violated the Telephone Consumer Protection Act, and again explained that she was requesting that her number be removed from an account that is not hers. The Chase representative finally agreed to remove Plaintiff's cellular telephone number.

27. Yet, like clockwork, the following month on November 16, 2019, Chase placed yet another robo-call to Plaintiff's cellular telephone number seeking to recover the same debt. The caller ID for this call displayed the number (847) 488-2001

28. On November 20, 2019, Chase placed another robo-call to Plaintiff's cellular telephone number seeking to recover the same debt. This time the caller ID changed to (847) 488-3078, which tricked Plaintiff into answering the unwanted call.

29. When Plaintiff answered the November 20, 2019 call, there was a brief pause of dead air at the outset of the call, and the computer transferred Plaintiff to a Chase representative who asked for Robert Taschler. Plaintiff again advised the Chase representative that she had the wrong number, and the representative hung up.

30. Calls made to (847) 488-3078 are answered by an artificial or prerecorded voice stating: "Thank you for calling Chase card services."

31. The initial pause of dead air at the start of the October 15 voicemail and the November 20 call indicates that the calls were automatically initiated, without human intervention, from a machine that has the capacity to store or produce telephone numbers to be called and to dial such numbers.

32. Each call Defendant made to Plaintiff's cellular telephone number was made

6

without the express consent of Plaintiff.

33. During the aforementioned phone conversations with Defendant's agents/representatives, Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had to call Plaintiff's aforementioned cellular telephone number using an ATDS.

34. Defendant made numerous calls to Plaintiff's cellular telephone number, (219) xxx-7061, using an ATDS which has the capacity: to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers, as defined by 47 U.S.C. § 227(a)(1).

35. Because the calls to Plaintiff did not start until after her grandfather passed away, and Plaintiff and her grandfather at one time resided at the same address, it appears Chase obtained Plaintiff's cellular telephone from a third party skip-tracing service.

36. By effectuating these unlawful phone calls, Defendant caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

37. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

38. Defendant's phone calls harmed Plaintiff by wasting her time, trespassing on her phone, invading her privacy as well as causing aggravation and inconvenience.

39. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." 2008 FCC Ruling ¶ 7. Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

40. Defendant's corporate policy and procedures provided no effective means for

Plaintiff to have her cellular telephone number removed from the call list.

41. None of Defendant's telephone calls to Plaintiff's cellular telephone number were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

42. Defendant violated the TCPA with respect to the Plaintiff and members of the class.

43. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the class.

## CLASS ACTION ALLEGATIONS

44. Plaintiff re-alleges and incorporates by reference the allegations contained in all other paragraphs as if fully stated herein. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class and numerous Subclasses.

45. In this case, Plaintiff seeks to certify a class and subclasses, subject to amendment, as follows:

> The **TCPA Class** consists of:
>
> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or someone acting on its behalf placed a non-emergency telephone call relating to a Chase account or debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint (6) without prior express consent of the called party to call said cellular telephone number.
>
> The **Cease Contact Subclass** consists of:
>
> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or someone acting on its behalf placed a non-emergency telephone call relating to a Chase account or debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint (6) where the call records note a request not to call said number or that it is a wrong number.
>
> The **Skip Trace Subclass** consists of:

8

92571

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or someone acting on its behalf placed a non-emergency telephone call relating to a Chase account or debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint (6) where Defendant obtained said telephone number via a skip trace.

46. Defendant has caused the Class and Subclasses actual harm, not only because they were subjected to the aggravation that necessarily accompanies these calls, but also because they frequently have to pay their cellphone service providers for the receipt of such calls.

47. These calls also intruded upon the Class and Subclass Members' seclusion, trespassed on their telephones, diminish cellular battery life, and wasted their time.

48. Plaintiff represents and is a member of the Class and Subclasses. Excluded from the Class and Subclasses is Defendant and any entities in which Defendant has a controlling interest, Defendant's employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

49. Plaintiff is presently unaware of the exact number of members in each Class and Subclass, but based upon the size and scope of Defendant's business, Plaintiff reasonably believes that the Class and Subclass members number, at a minimum, in the thousands.

50. Plaintiff and all members of each Class and Subclass have been harmed by Defendant's actions.

51. This Class Action Complaint seeks money damages and injunctive relief.

52. The joinder of all Class and Subclass members is impractical due to the size and relatively modest value of each individual claim.

53. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The Class and

Subclasses can be easily identified through records maintained by Defendant.

54. There are question of law and fact common to the members of each Class and Subclass, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

   a) Whether the system used to place the calls was an ATDS;

   b) Whether Defendant engaged in a pattern of using an ATDS to place calls to cellular telephone numbers without the prior express consent of the called party;

   c) Whether someone advising Defendant to cease contact revokes any prior express consent to call that may have previously existed;

   d) Whether someone advising Defendant it is calling the wrong number revokes any prior express consent to call even if it is not a true wrong number;

   e) Whether Defendant's conduct was willful or knowing; and

   f) Whether Defendant's actions violated the TCPA.

55. As a person who received calls that were made using an ATDS without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of each Class and Subclass.

56. Plaintiff will fairly and adequately represent and protect the interests of the Class and each Subclass, and Plaintiff does not have an interest that is antagonistic to any member of any Class or Subclass.

57. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

58. A class action is the superior method for the fair and efficient adjudication of this

controversy.

59. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small.

60. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

61. Defendant has acted on grounds generally applicable to each Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to each Class and Subclass as a whole appropriate.

62. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I
**Violation of the TCPA**

63. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 61.

64. Defendant violated the TCPA with respect to Plaintiff each time Defendant or someone acting on its behalf called Plaintiff's cellular telephone number using an ATDS without having prior express consent.

65. Defendant violated the TCPA with respect to Plaintiff each time Defendant or someone acting on its behalf called Plaintiff's cellular telephone number using an ATDS without having prior express consent.

11

92571

66. Defendant knowingly violated the TCPA for each call to a number after consent was revoked.

67. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent, in violation of federal law including 47 U.S.C. § 227(b)(1)(A)(iii).

68. As a result of Defendant's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

69. Plaintiff and the class members are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA in the future.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of her and the Class, and against J.P. Morgan Chase Bank, N.A., for:

(a) A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

(b) An injunction prohibiting Defendant from calling any third parties or numbers that were skip traced, or obtained through means other than by obtaining the called party's prior express consent, to ensure that Plaintiff is not called again now or if Plaintiff obtains additional telephone numbers in the future;

(c) An injunction requiring Defendant to file quarterly reports of third party audits with the Court on Defendant's respective systems and procedures not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called in the future;

(d) An award of actual damages in an amount to be proven at trial;

(e) An award of statutory damages for Plaintiff and each Class and Subclass member

in the amount of $500.00 for each and every call that violated the TCPA;

(f) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every call that violated the TCPA;

(g) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of each Class and Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for each Class and Subclass;

(h) An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(i) Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: March 24, 2020

Respectfully submitted,

TASHIA TASCHLER, individually and on behalf of all others similarly situated, Plaintiffs

By:   /s/ Keith J. Keogh
Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*