**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TASHIA TASCHLER, TIFFANY WYNN, and MICHAEL ROSSI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>J.P. MORGAN CHASE & CO., and J.P. MORGAN CHASE BANK, N.A.,<br><br>                    Defendants. | 20-cv-02535-JMF<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF MATERIAL FACTS ............................................................................... 2

      A.    The Alleged Call ............................................................................................... 2

      B.    Chase's Proof of Undisputed Material Facts ......................................... 3

            (1)    Taschler Calls ................................................................................. 3

            (2)    Wynn and Rossi Calls ................................................................. 4

ARGUMENT .......................................................................................................................... 9

      A.    Summary Judgment Standard ...................................................................... 9

      B.    Taschler's TCPA Claim Has No Merit Because Chase Never Called Her
           With An Automatic Telephone Dialing System ................................... 10

      C.    Wynn and Rossi's TCPA Claims Have No Merit Because Chase Did Not
           Make the Alleged Calls ............................................................................. 13

CONCLUSION ..................................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
  No. 17-cv-03315-PJH, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018)........................................14

*Baker v. Am. Airlines, Inc.*,
  430 F.3d 750 (5th Cir. 2005) .................................................................................................9

*Bank v. Vivint Solar, Inc.*,
  No. 18-CV-2555, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019)...........................................13

*Boyd v. General Revenue Corp.*,
  5 F. Supp. 3d 940 (M.D. Tenn. 2013)...............................................................................11, 15

*Carlisle v. Green Tree Servicing*,
  2016 WL 4011238 (N.D. Ga. July 27, 2016).........................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................................9

*Chambers v. Am. Trans Air, Inc.*,
  17 F.3d 998 (7th Cir. 1994) ....................................................................................................9

*Childress v. Liberty Mut. Ins. Co.*,
  No. 17-CV-1051 MV/KBM, 2018 WL 4684209 (D.N.M. Sept. 28, 2018) ...........................13

*In Re: Christine Annette Delgado*,
  No. 17-52130-MEH (N.D. Cal.), Dkt 20-1 (Apr. 12, 2018).....................................................7

*Cunningham v. Kondaur Capital*,
  No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014)...........................................13

*Dennis v. Regional Adjustment Bureau, Inc.*,
  No. 09-61494-CIV-UNGARO, 2010 WL 3359369 (S.D. Fla. July 7, 2010)..........................11

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020)..................................................................................................10

*Estrella v. LTD Financial Services, LP*,
  No. 8:14-cv-2624-T-27AEP, 2015 WL 6742062 (M.D. Fla. Nov. 2, 2015) ....................11, 12

*Frisch v. AllianceOne Receivables Management*,
  No. 15-cv-926-pp, 2017 WL 25471 (E.D. Wis. Jan. 3, 2017)....................................11, 12, 13

*Gaza v. LTD Fin. Serv.*,
  2015 WL 5009741 (M.D. Fla. Aug. 24, 2015) ......................................................................11

*Glassbrook v. Rose Acceptance Corp.*,
  No. 13-10152, 2015 WL 5751804 (E.D. Mich. Sept. 11, 2015).............................................12

*Harlen Assocs. v. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001)....................................................................................................9

*Harris v. Duty Free Shoppers Ltd. P'ship*,
   940 F.2d 1272 (9th Cir. 1991) ............................................................................9

*Jackson v. Caribbean Cruise Line, Inc.*,
   88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...................................................................14

*Jackson v. Cavalry Portfolio Servs., LLC*,
   No. 13-cv-00617, 2014 WL 517490 (E.D. Mo. Feb. 7, 2014) .............................11

*Keating v. Peterson's Nelnet, LLC*,
   615 F. App'x 365 (6th Cir. 2015) ...................................................................13, 14

*Kruskall v. Sallie Mae Serv., Inc.*,
   No. 2016 WL 1056973, 2016 WL 1056973 (D. Mass. Mar. 14, 2016)................14

*Martin v. Allied Interstate, LLC*,
   192 F. Supp. 3d 1296 (S.D. Fla. 2016) ...............................................................11

*Meeks v. Buffalo Wild Wings, Inc.*,
   No. 2018 WL 1524067, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)................14

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-CV-02440, 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)........................14

*Mudgett v. Navy Federal Credit Union*,
   998 F. Supp. 2d 722 (E.D. Wis. 2012)..................................................................11

*Norman v. AllianceOne Receivables Mgmt, Inc.*,
   637 F. App'x 214 (7th Cir. 2015) ...................................................................11, 12

*Reichman v. Poshmark, Inc.*,
   No. 16-CV-2359 DMS (JLB), 2017 WL 2104273 (S.D. Cal. May 15, 2017)........13

*Robinson v. Concentra Health Servs., Inc.*,
   781 F.3d 42 (2d Cir. 2015)................................................................................9, 15

*Seri v. Crosscountry Mortg., Inc.*,
   No. 1:16-cv-01214-DAP, 2016 WL 5405257 (N.D. Ohio Sept. 28, 2016) ...........14

*Warciak v. Subway Restaurants, Inc.*,
   No. 1:16-cv-08694, 2019 WL 978666 (N.D. Ill. Feb. 28, 2019)...........................14

*Wick v. Twilio Inc.*,
   No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017)..................14

*Zelma v. Burke*,
   No. 2:16-02559-CCC-MF, 2017 WL 58581 (D.N.J. Jan. 4, 2017) .......................14

**Statutes**

47 U.S.C. § 227(a)(1)...........................................................................................................9

47 U.S.C. § 227(b)(1)(A)......................................................................................................9

Bank Holding Company Act of 1956 § 4(k)........................................................................1

Bank Holding Company Act of 1956 § 4(l).........................................................................1

**Other Authorities**

Fed. R. Civ. P. 56 ..........................................................................................................1

Fed. R. Civ. P. 56(a) ......................................................................................................8

In re Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991, 18 FCC Rcd. 14,014, 14,091 (2003)..................................................10

Defendants JPMorgan Chase Bank, N.A. ("Chase") and JPMorgan Chase & Co.,[1] by their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submit this memorandum of law in support of their Motion for Summary Judgment, as follows:

## PRELIMINARY STATEMENT

Although a motion for summary judgment is not typically brought at this early stage and immediately after an Answer is filed, in this particular case such a motion is warranted because Plaintiffs cannot possibly support their claims.  Chase seeks to dispose of this meritless case before any more time, money, and judicial resources are needlessly wasted, particularly given Plaintiffs' gamesmanship leading up to, and after, the filing of their Complaint.

This putative class action lawsuit, brought under the Telephone Consumer Protection Act ("TCPA"), is a combined copycat pleading of two earlier lawsuits the very same named Plaintiffs previously filed in the Northern District of Illinois and the Southern District of New York, and in each instance voluntarily dismissed for tactical reasons.  All three named Plaintiffs have continued to pursue their TCPA claims against Chase even though factual information fatal to each of their claims has been provided to them through counsel, including that: (1) each call placed to Plaintiff Tashia Taschler ("Taschler") was dialed manually, which makes it impossible for Taschler to prove Chase violated the TCPA by calling her using an automatic telephone dialing system ("ATDS"); and (2) the calls that Plaintiffs Tiffany Wynn ("Wynn") and Michael Rossi ("Rossi") received were "spoofed" calls made by unknown third parties pretending to be Chase, and Chase has confirmed that it did not make the alleged calls. Moreover, Chase has explained to Plaintiffs,

---

[1] Specially appearing Defendant JPMorgan Chase & Co. (the "Holding Company") is a financial holding company under section 4(k) and (l) of the Bank Holding Company Act of 1956. The Holding Company is not a proper defendant to this action, and joins Chase on this Motion for Summary Judgment without waiver of its right to contest its improper joinder as a defendant to this action.

through counsel, that JPMorgan Chase & Co. serves as a financial holding company under section 4(k) and (l) of the Bank Holding Company Act of 1956, and is not a proper party to this action. Notwithstanding being provided with all of this information, Plaintiffs have not only persisted with this case, but—seemingly in an effort to coerce settlement—have served overly broad and burdensome written discovery before Chase even responded to their most recent pleading.

The uncontroverted evidence here demonstrates that Plaintiffs cannot prevail on their claims, and this Court should reject Plaintiffs' attempts to pursue this meritless litigation across the country.  This Motion should be granted in its entirety, judgment should be entered as a matter of law in favor of Chase, and this case should be dismissed.

## STATEMENT OF MATERIAL FACTS

**A.     The Alleged Call**

Plaintiffs allege that since September 2019, Chase placed at least four "robocalls" to Taschler's cellular phone seeking to recover a debt from Taschler's grandfather, who is deceased. *See* Amended Complaint, Dkt. No. 12 ("Am. Compl.") ¶¶ 19-35.  Plaintiffs allege calls from Chase to Taschler on four dates: September 17, 2019, October 15, 2019, November 16, 2019 and November 20, 2019.  *Id*. ¶¶ 19-31.  Plaintiffs claim each of these calls violated the TCPA because the calls were allegedly made, without Taschler's express consent, "using an ATDS which has the capacity: to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  *Id*. ¶¶ 32, 34.  Taschler allegedly heard a "brief pause of dead air" at the beginning of the September 17, 2019 and November 20, 2019 calls, which she thinks indicates that a "computer transferred [her] to a Chase representative."  *Id*. ¶¶ 22, 29. With respect to the October 15, 2019 and November 20, 2019 calls, Taschler allegedly heard a "brief pause of dead air" at the start of the calls, which she thinks "indicates that the calls were

automatically initiated, without human intervention, from a machine that has the capacity to store or produce telephone numbers to be called and to dial such numbers." *Id*. ¶ 31.

Similarly, Plaintiffs allege that between January 2019 and January 2020, Chase regularly called Wynn's cellular number, using an ATDS, without her prior consent. *Id*. ¶ 37. Plaintiffs claim the calls sought to collect a debt from someone other than Wynn. *Id*. ¶ 38. On many of the calls, Wynn allegedly heard a "momentary pause when she picked up the phone before a live person spoke." *Id*. ¶ 39. Plaintiffs claim this pause is "a hallmark of an ATDS." *Id*. Wynn bases her belief that the calls came from Chase because the number 800-945-2000 appeared on her Caller ID, which is a Chase number. *Id*. ¶ 37.

Finally, Plaintiffs allege that Chase has been calling Rossi's cellular number since January 2019. *Id*. ¶ 42. On each call, a "recording" allegedly offered him rewards through a Marriott Bonvoy Credit Card. *Id*. ¶ 43. Only five calls to Rossi are specifically identified in the Complaint, each of those calls was made on February 3, 2020. Rossi also bases his belief that the calls originated from Chase only on the fact that his Caller ID noted the calling number as 800-338-5960, which is a Chase number. *Id*. ¶ 42.

**B.      Chase's Proof of Undisputed Material Facts**

**(1)      Taschler Calls**

As set forth in the Declaration of Eric Bass, a Vice President and Operation Manager at JPMorgan Chase Bank, N.A., Chase's business records show that each call to the number allegedly belonging to Taschler was made using "a manual dialing process." *See* Declaration of Eric Bass ("Bass Decl.") ¶ 5. This means that a Chase advisor "placed each of the calls using a standard touch button desktop telephone and manually key-punching the telephone number, including [Taschler's alleged cellular number], on the telephone's dialing pad." *Id*. ¶ 7. Chase's call logs,

attached as Exhibits 1 and 2 to the Bass Declaration, also indicate that each call to the number allegedly belonging to Tascher was manual.  *See* Bass Decl., ¶ 6, Exs. 1-2.

**(2)   Wynn and Rossi Calls**

Though Wynn and Rossi allege in conclusory fashion that Chase placed unauthorized telephone calls to them, they ignore both publicly available information regarding the calls' origins known to them pre-suit, and Chase's explanation post-suit that these were "spoofing"[2] calls made by unaffiliated third parties that have long been the subject of scam warnings.  *See* Declaration of Christina A. Sarchio ("Sarchio Decl.") ¶ 11.

A simple Google search using the Chase telephone numbers Wynn and Rossi allegedly observed on their respective caller IDs reveals their false origins.  For instance, a Google search for the telephone number (800) 338-5960, which Rossi alleges originated from the Marriott Bonvoy Chase Card, results in a number of hits describing a scam with this number. The first search result has a banner at the top that says "PHONE SCAM ALERT," and explains it is a debt reduction scam:[3]

---

[2] The Federal Communications Commission ("FCC") defines spoofing as follows: "Spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity.  Scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust. If you answer, they use scam scripts to try to steal your money or valuable personal information, which can be used in fraudulent activity." Caller ID Spoofing, FEDERAL COMMUNICATIONS COMMISSION, https://www.fcc.gov/consumers/guides/spoofing-and-caller-id#:~:text=Under%20the%20Truth%20in%20Caller,to%20%2410%2C000%20for%20each%20violation (last visited June 30, 2020); Sarchio Decl. ¶ 9, Ex. 7.  The Court can and should take judicial notice of the FCC guidance on this Motion pursuant to Rule 201 of the Federal Rules of Evidence.

[3] Sarchio Decl. ¶ 4, Ex. 2 (screenshot of https://www.nomorobo.com/lookup/800-338-5960 visited June 24, 2020).



A website called "RoboKiller" similarly confirms calls from 800-338-5960 are a scam:[4]



A comment on 800notes.com states: "1 800-338-5960; (800) 335 5960 - CREDIT CARD

SCAMMERS = SCAM & SCAMMERS Trying to get your personal data (SSN, date of birth,

address, phone number, etc.) under the disguise of …'offering' a 'low interest' credit card - the

---

[4] *See* Sarchio Decl. ¶ 5, Ex. 3 (screenshot of https://lookup.robokiller.com/p/800-338-5960 visited June 24, 2020). Tellingly, Wynn and Rossi cited this exact website in their originally filed complaint and included allegations of the number being associated with a "robocall credit card scammer."  *See* Sarchio Decl. ¶ 3, Ex. 1 ¶ 15 & n.5.

funniest thing is the .... $10 'processing fee', of course, paid by ... one of your own, existing credit cards!! PUT THIS NUMBER ON YOUR NO CALL OR BLOCKED LIST, ASAP."[5]

Similarly, a search of the telephone number 1-800-945-2000, which Wynn alleges originated from Chase, also results in numerous hits with headings such as "New Scam Alert: Police Warn Rocklanders To Be Wary Of These Phone Calls."[6] The Daily Voice webpage with the aforementioned heading features an article dated June 17, 2018, describing how calls from 800-945-2000 (which appears on Caller ID as "Chase Card Services") are not from Chase.  *Id*. The article quotes the Clarkstown Police as saying that they have "been aggressively investigating these frauds but most of the suspects are outside of the United States." *Id.*

The website 800notes.com has comments as far back as November 12, 2008 for number 800-945-2000, including the following comment: "It is clear these frauds are using a legitimate Chase bank number but that is not the number they are calling from! Everyone should know that a bank will never call and ask for personal information!"[7] And a webpage called the "Number Guru" assigns 800-945-2000 their "100% Spammer Score," with a comment on January 29, 2020 noting, "Caller ID labeled it Chase Card SVCS. It's automated first clue to not right. It was my 'last chance' to lower my credit card interest rate. I contacted Chase directly. This call did not

---

[5] *See* Sarchio Decl. ¶ 6, Ex. 4 (excerpt from https://800notes.com/Phone.aspx/1-800-338-5960 visited June 25, 2020, comment dated February 24, 2020).  Wynn and Rossi also cited this website in their originally-filed complaint. *See* Sarchio Decl. ¶ 3, Ex. 1 ¶ 15 & n.6.

[6] *See* Sarchio Decl. ¶ 10, Ex. 8 (New Scam Alert: Police Warn Rocklanders To Be Wary Of These Phone Calls | Ramapo Daily Voice, DAILY VOICE (June 17, 2018), https://dailyvoice.com/new-york/ramapo/news/new-scam-alert-police-warn-rocklanders-to-be-wary-of-these-phone-calls/738651/).

[7] *See* Sarchio Decl. ¶ 7, Ex. 5 (excerpt from https://800notes.com/Phone.aspx/1-800-945-2000 visited June 25, 2020, comment dated November 12, 2008).

come from Chase."[8]  RoboKiller even has a YouTube video for this number, commenting "Beware! Year to date in 2020, the Chase Credit Card Services scam has been one of the top 10 scam calls RoboKiller has seen in its global scammer database."[9]

Chase not only directed Plaintiffs' counsel to the aforementioned webpages the first time they filed suit, but also provided a declaration that Chase filed in an earlier bankruptcy case on a motion to show cause that was subsequently dismissed.  The declaration confirmed that the number (800) 945-2000 had not been used to contract the debtor.  *See* Declaration of Scott Simon, *In Re: Christine Annette Delgado*, No. 17-52130-MEH (N.D. Cal.), Dkt 20-1 (Apr. 12, 2018).

Although Wynn and Rossi dismissed their originally-filed suit within days after Chase disclosed this information, they renewed their claims by joining the instant suit.  The allegations remain baseless, as confirmed by the declarations submitted with this Motion.

Keith Roemer, Chase's Vice President, Marketing Systems Manager, is familiar with all the product offers that Chase uses to promote its credit cards, including Chase's Marriott Bonvoy credit card offerings.  *See* Declaration of Keith Roemer ("Roemer Decl.") ¶ 2.  Mr. Roemer confirms, after reviewing Chase's database containing information related to every credit card product offer Chase has marketed since at least 2002, that Chase does not market its Marriott Bonvoy Cards through outbound telemarketing, and has not done so since June 2009. *Id*. ¶¶ 3-4.

Caroline Covert, Marketing Senior Associate at Chase, serves as the relationship and marketing manager for the Chase Marriott Bonvoy credit card brand.[10]  *See* Declaration of Caroline

---

[8] *See* Sarchio Decl. ¶ 8, Ex. 6 (excerpt from https://www.numberguru.com/phone/800/945/2000/ visited June 29, 2020).

[9] RoboKiller 2020 Scam Alert: Chase Credit Card Services Scam – YouTube, YOUTUBE, https://www.youtube.com/watch?v=N6LIAsL3dQw (last visited June 25, 2020).

[10] *Id*. ¶ 4.

Covert ("Covert Decl.") ¶ 1. Ms. Covert explains that while Chase communicates with cardholders by phone; the telephone number (800) 338-5960 is an inbound customer service telephone number dedicated to Marriott Bonvoy cardholders for purposes of contacting Chase. *Id.* ¶¶ 2, 4-6. Marriott Bonvoy cardholders use the number, which appears on the back of the Marriott Bonvoy card, to speak to a Chase customer service specialist to address any needs or questions cardholders may have with their existing Marriott Bonvoy Card accounts, such as changing their contact information, requesting a credit line increase, reporting fraud, and requesting duplicate account statements. *Id.* ¶ 5. In addition to not using telemarking to promote Marriott Bonvoy credit cards, as Mr. Roemer declares, Chase customer service specialists do not use pre-recorded messages when they contact Chase customers. *Id.*

Scott Simon, Chase's Vice President and Business Operations Manager, explains in his declaration that the phone number 1-800-945-2000 is associated with Chase and appears on Chase Slate credit cards. *See* Declaration of Scott Simon ("Simon Decl.") ¶ 5. Mr. Simon declares, however, that "Chase does not use this phone number to make calls to its customers for collections purposes." *Id.* ¶ 5. Mr. Simon reviewed Chase's records to search for calls to Ms. Wynn's telephone number. *Id.* ¶ 4. Mr. Simon explains that Chase maintains electronic account records related to each credit card account. *Id.* ¶ 3. Each telephone call made or received by Chase about a cardholder's account would be reflected in Chase's records. *Id.* Mr. Simon's search revealed that Ms. Wynn's phone number is not associated with any Chase account and he "did not find any record of Chase placing debt collection calls to that number." *Id.* ¶ 4.

Thus, Chase's record evidence, along with the publicly available information, establish that Wynn and Rossi were the targets of "spoofing" calls that Chase did ***not*** initiate.

8

## ARGUMENT

### A.     Summary Judgment Standard

To succeed on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson*, 781 F.3d at 44 (internal quotation marks omitted).  In other words, "[m]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

"Rule 56 does not require that any discovery take place before summary judgment can be granted." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756, fn 9 (5th Cir. 2005) (internal quotation marks and citation omitted).  *See also Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) ("The fact that discovery is not complete--indeed, has not begun--need not defeat the motion. A defendant may move for summary judgment at any time.") (internal quotations and citation omitted); *Harris v. Duty Free Shoppers Ltd. P'ship*, 940 F.2d 1272, 1276 (9th Cir. 1991) (affirming early grant of summary judgment where the plaintiff could not "show[] what specific facts it hopes to discover that will raise an issue of material fact").

**B.      Taschler's TCPA Claim Has No Merit Because Chase Never Called Her With An Automatic Telephone Dialing System**

The undisputed facts establish that the essential factual premise of Plaintiff Tascher's TCPA claim—calls to her from an ATDS—is wrong.  The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A).  To substantiate a claim under this provision of the TCPA, a plaintiff must prove that (1) the defendant made a call to a cellular phone, (2) by the use of an ATDS, and (3) without prior express consent.  *See id.*

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  Thus, to quality as an ATDS, a dialing system must have "two concurrent capacities. First, it must have the 'capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[.]' Second, it must have the 'capacity . . . to dial such numbers.'"  *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 282-83 (2d Cir. 2020). The second capacity requires that the system have the ability to dial telephone numbers "without human intervention."  *Id*. at 287 (quoting In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,091 (2003)).  Accordingly, "human intervention" in the form of manually "pushing buttons on a keypad or touch screen to make a telephone call" prevents a finding that an ATDS system was used to make a call and precludes a TCPA claim.  *Id*. at 289 (quoting *Oxford English Dictionary* (3d ed. 2014)).

Numerous courts have granted summary judgment in TCPA cases where a defendant presented declaration testimony from an employee and/or call records to demonstrate the calls to plaintiff were manually dialed.  For instance, the Seventh Circuit affirmed summary judgment

when the defendant's call log showed that an employee manually placed the calls to the plaintiff. *See Norman v. AllianceOne Receivables Mgmt, Inc*., 637 F. App'x 214, 216 (7th Cir. 2015) ("With the call log showing that AllianceOne manually called Norman, and no contrary evidence about those calls in the record, the district court correctly granted summary judgment. No reasonable jury could conclude from this evidence that an autodialer called Norman."). Other courts have held similarly. *See Frisch v. AllianceOne Receivables Management*, *Inc*., No. 15-cv-926-pp, 2017 WL 25471, at *4-5 (E.D. Wis. Jan. 3, 2017) (granting summary judgment for defendant where defendant's call records related to the call to plaintiff and declaration testimony from defendant employee familiar with the call records demonstrated the calls were manually dialed); *Carlisle v. Green Tree Servicing*, No. 1:15-CV-2332-TWT, 2016 WL 4011238, at *1-2 (N.D. Ga. July 27, 2016); *Jackson v. Cavalry Portfolio Servs., LLC*, No. 13-cv-00617, 2014 WL 517490, at *2 (E.D. Mo. Feb. 7, 2014); *Boyd v. General Revenue Corp*., 5 F. Supp. 3d 940, 955 (M.D. Tenn. 2013); *Dennis v. Regional Adjustment Bureau, Inc*., No. 09-61494-CIV-UNGARO, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010); *see also Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308-09  (S.D. Fla. 2016) (granting summary judgment for defendant where defendant employee deposition testimony established that the calls to plaintiff were manually dialed); *Estrella v. LTD Financial Services, LP*, No. 8:14-cv-2624-T-27AEP, 2015 WL 6742062, at *2-4 (M.D. Fla. Nov. 2, 2015); *Gaza v. LTD Fin. Serv. L.P.*, Case No. 8:14-cv-1012-T-30JSS, 2015 WL 5009741, at *4-5 (M.D. Fla. Aug. 24, 2015); *Mudgett v. Navy Federal Credit Union*, 998 F. Supp. 2d 722, 723-25 (E.D. Wis. 2012) (granting summary judgment for defendant based on declarations from employees who claimed they manually dialed plaintiff and a collection manager who testified that, even though defendant sometimes uses ATDSs, one was not used to call plaintiff).

11

Here, Chase's evidence establishes beyond dispute that it called the number allegedly belonging to Taschler manually and did not use an ATDS; therefore, no reasonable jury could conclude that Chase's calls violated the TCPA. *See*, *e.g.*, *Norman*, 637 F. App'x at 216; *Frisch*, 2017 WL 25471, at *4-5. As the Bass Declaration makes clear, for any call to Taschler's alleged cellular number, Chase used a "a manual dialing process" where a Chase advisor used "a standard touch button desktop telephone" and "manually key-punch[ed]" Taschler's alleged number. Bass Decl. ¶ 7. Chase's call records also confirm that the calls to Taschler's alleged number were manually dialed. *See* Bass Decl. ¶ 6, Ex. 1-2.

Plaintiffs' only contention to the contrary is their allegation that there was a "brief pause of dead air" at the outset of the September 17, 2019, October 15, 2019 and November 20, 2019 calls. Am. Compl. ¶¶ 22, 24, 29, 31. Specifically, Plaintiffs make conclusory allegations that: (1) an alleged "brief pause of dead air" at the start of the September 17, 2019 call indicated that a "computer transferred Ms. Taschler to a Chase representative," *id*. ¶ 22; and (2) an alleged "initial pause of dead air" at the start of the October 15, 2019 and November 20, 2019 calls indicates that those calls "were automatically initiated, without human intervention, from a machine that has the capacity to store or produce telephone numbers to be called and to dial." *Id*. ¶ 31.

These conclusory allegations are not sufficient. *See Estrella*, 2015 WL 6742062, at *3-4 (awarding summary judgment for defendant and reasoning "there is no foundation . . . for Plaintiff's conclusion that 'clicks and delays' and 'prolonged silences' means that an ATDS or predictive dialer was being used . . . .").[11] As Taschler has no basis for claiming the calls were not manual, the Court should award summary judgment for Chase.

---

[11] Courts have held that even if Plaintiffs could show that Chase owns an ATDS, such evidence is still insufficient to survive a motion for summary judgment if Plaintiffs cannot show an ATDS was used to call Plaintiffs. *See Norman*, 637 F. App'x at 216; *Glassbrook v. Rose Acceptance*

**C.**     **Wynn and Rossi's TCPA Claims Have No Merit Because Chase Did Not Make the Alleged Calls**

It is well settled that a defendant cannot be held liable for calls it did not place, and Chase's business records establish that Chase did not place the alleged calls to Wynn and Rossi. *See, e.g., Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 374-75 (6th Cir. 2015) (affirming grant of summary judgment in TCPA case where nothing in the record "gives any indication that the defendants authorized" or "had any advance knowledge" of alleged text-messaging campaign); *Reichman v. Poshmark, Inc.*, No. 16-cv-2359 DMS (JLB), 2017 WL 2104273, at *2 (S.D. Cal. May 15, 2017) (granting early summary judgment in TCPA case where plaintiff could not establish defendant made the purported calls, and plaintiff could not rely on pure speculation that discovery might yield information to the contrary).

While neither Wynn nor Rossi plead anything other than conclusory assertions that the telephone numbers that appeared on their respective Caller IDs belong to Chase, Chase has provided evidence to confirm that no calls were or could have been placed to their numbers.  This evidence is dispositive of Plaintiffs' claims.  *See, e.g., Bank v. Vivint Solar, Inc.*, No. 18-CV-2555, 2019 WL 1306064, at *5 (E.D.N.Y. Mar. 22, 2019) (dismissing TCPA claim where plaintiff failed to allege any connection to the defendant, for instance where the caller disclosed the name of the entity calling, or transferred the call to a live person who claimed to work for the defendant); *Cunningham v. Kondaur Capital*, No. 3:14-CV-1574, 2014 WL 8335868, at *5 (M.D. Tenn. Nov. 19, 2014) (finding no factual allegations to support claim that defendant was directing calls, or that defendant benefitted from calls made by third parties); *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (dismissing TCPA claim

---

*Corp.*, No. 13-10152, 2015 WL 5751804, at *4 (E.D. Mich. Sept. 11, 2015); *Frisch*, 2017 WL 25471, at *4-5.

where there were are no factual allegations that "would establish that Defendant 'made,' or 'physically placed' the call to Plaintiff's cell phone").[12]

As to Rossi, Chase's records and the declarations of Mr. Roemer and Ms. Covert demonstrate that the number Rossi claims appeared on his Caller ID is a number Chase uses for inbound customer service calls and that Chase would not have called Rossi as it has not used telemarketing to promote its Marriott Bonvoy cards for more than a decade.  Roemer Decl. ¶¶ 2, 4; Covert Dec. ¶¶ 1, 4-6.

Likewise, as to Wynn, Chase's records and the declaration of Scott Simon establish that Chase does not use the number 1-800-945-2000 to make collection calls to its customers for collections purposes, and that a thorough search of Chase's records revealed Ms. Wynn's phone number is not associated with any Chase account and Mr. Simon found no record of Chase placing any debt collection calls to that number.  Simon Dec. ¶¶ 3-5.

Accordingly, Chase's records demonstrate that the telemarketing calls Rossi received and debt collection calls Wynn received did not originate from Chase.  *See* Roemer Decl. ¶ 4, Covert Decl. ¶ 5, Simon Decl. ¶¶ 4, 5. Instead, as the litany of online complaints and warnings reveal, both numbers at issue have been "spoofed" and are being used fraudulently by unknown third

---

[12] Numerous courts have reached the same result sought here on similar evidence. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x at 371;  *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440, 2015 WL 7736547, at *4-5 (S.D.N.Y. Nov. 30, 2015); *Kruskall v. Sallie Mae Serv., Inc.*, No. 2016 WL 1056973, 2016 WL 1056973, at *3-4 (D. Mass. Mar. 14, 2016);  *Seri v. Crosscountry Mortg., Inc.*, No. 1:16-cv-01214-DAP, 2016 WL 5405257, at *4 (N.D. Ohio Sept. 28, 2016); *Zelma v. Burke*, No. 2:16-02559-CCC-MF, 2017 WL 58581, at *4 (D.N.J. Jan. 4, 2017); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018); *Meeks v. Buffalo Wild Wings, Inc.*, No. 2018 WL 1524067, 2018 WL 1524067, at *3-5 (N.D. Cal. Mar. 28, 2018); *Warciak v. Subway Restaurants, Inc.*, No. 1:16-cv-08694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019).

parties to trick individuals into answering calls they believe may be from Chase. *See* Sarchio Decl. ¶¶ 4-8, Exs. 2-6. This Court should dismiss this case based on the record evidence submitted demonstrating that Chase cannot be held liable as a matter of law. *See Boyd*, 5 F. Supp. 3d at 955 (granting summary judgment for defendant Sallie Mae where employee affidavit and business records indicated it had not made any calls to plaintiff during the relevant time period). Speculation that discovery may show otherwise is not enough to stave off summary judgment under these circumstances. *See Robinson*, 781 F.3d at 44.

## <u>CONCLUSION</u>

The record evidence establishes that the statutory violations Plaintiffs allege in this case simply did not happen. Chase thus respectfully requests that the Court grant summary judgment in its favor on the entirety of Plaintiffs' Complaint and award any further relief the Court deems just and appropriate.

Dated: June 30, 2020

By: /s/ Sylvia E. Simson

Sylvia E. Simson
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
SimsonS@gtlaw.com

Gregory E. Ostfeld (pro hac vice
application forthcoming)
Monica S. Harris
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
OstfeldG@gtlaw.com
HarrisMS@gtlaw.com

Christina Guerola Sarchio
Amisha R. Patel
Dechert, LLP
1900 K Street NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333
Christina.Sarchio@dechert.com
Amisha.Patel@dechert.com

*Attorneys for JPMorgan Chase
Bank, N.A. and JPMorgan Chase &
Co.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2020, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sylvia E. Simson*